[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, 50, whose birth name is Beirne, and the defendant, 51, married on January 28, 1967 in Stamford, Connecticut. Jurisdiction for this dissolution of marriage action is founded on the plaintiff's continuous Connecticut residence for many years next preceding its commencement. Two children are issue of the marriage, both now adults.
The plaintiff has been working as a special education teacher's assistant for an annual salary of $16,200. The defendant has been employed nights by the U.S. Postal Service for 30 years, now as an expediter, earning $581.46 net weekly after mandatory deductions. He also conducted a cleaning service for about five years, closing the business about two years ago.
The defendant's financial affidavits list "U.S. Postal Service Retirement Plan". Since the defendant has been employed by the postal service for 30 years, and his affidavit labels his pension as an "annuity" the court infers that he is covered by the Civil Service Retirement System (CSRS). There is no evidence that he switched to the Federal Employees Retirement System (FERS). He may retire at age 55 and then begin to collect his annuity immediately. The court notes that the plaintiff has been his wife for 28 years, leaving in September, 1995. Also undetermined is the social security benefit the plaintiff may eventually receive. CT Page 7825
The parties purchased a home located at 28 Middlebury Road, Stamford in October, 1976 for $56,000 with a $14,000 mortgage. In January, 1988 they sold it, realizing an $89,000 net profit. The buyers executed a $55,000 purchase money mortgage, and $24,000 still remains unpaid. The plaintiff does not list her 50% interest in the mortgage note as an asset although the defendant does list his interest. The buyers had resold the home in 1989, when the plaintiff and defendant received a partial payment for $35,850. No collection efforts were ever made and the court concludes that the note is now uncollectible. The lump sum payment was placed, as cash, in a jointly owned safety deposit box. Over time the defendant withdrew the money for living expenses and items purchased for family use.
The parties then moved to 65 London Land, Stamford, a home owned by the defendant's mother. The parties have widely differing versions as to what then happened.
The plaintiff testified that some of the Middlebury sale proceeds were spent on the London Lane home. The defendant's mother had deeded a 10% interest in the premises by deed dated August 19, 1987 to defendant and another 10% to his brother, Larry, (Plaintiff's Exhibit #3) recorded on August 24, 1987. From the house sale proceeds, the plaintiff purchased a fur coat costing $9,800, purchased a truck for $11,000, paid a $15,000 auto loan, and put some money in a CD.
The court finds no credible evidence to support the plaintiff's claim that she and the defendant bargained for a transfer of the defendant's mother's interest in the London Lane home. The plaintiff was determined to move from the Middlebury home, prevailed upon her husband to sell it and then moved to London Lane without a clear definition of the terms under which the parties were taking up residence in the defendant's mother home. Since the defendant already owned an undivided 10% interest the parties were not tenants in the classic sense of the term.
The two brothers mortgaged London Lane For $167,000 on October 5, 1989 (Plaintiff's Exhibit #1). A second mortgage, junior to the 1989 mortgage was given by the two brothers and their mother on April 4, 1991 in the amount of $55,000 as a home equity credit line (Plaintiff's Exhibit #4). The three mortgagors and the plaintiff all agreed to apply $33,571 to the payment of debts (Plaintiff's Exhibit #5) including a car loan of $14,360. The CT Page 7826 remaining funds were spent on a swimming pool and deck costing about $20,000.
Money was also spent on college expenses for the parties' children (Plaintiff's Exhibits #11 and #12), travel, and vacations.
The parties made real estate investments in Florida which ultimately led to the plaintiff bringing another suit against the defendant, his mother and his brothers, now pending in this court bearing Docket # CV96-0152272. This court will not attempt to resolve the claims and issues raised in that civil suit but will leave the parties to their civil remedies.
The plaintiff testified to many complaints she had about the defendant, as contributing causes of the marriage breakdown. The defendant suspected that the plaintiff's affection for the defendant was lost, caused by her attraction to another man. The plaintiff's handwritten letter to a psychic lends support to the defendant's suspicions, wherein she describes a "Mike" as the man she loves (Defendant's Exhibit H).
Having reviewed the evidence in light of case law and the statutory criteria found in § 46b-81 and § 46b-82, the court enters the following orders.
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown.
2. The plaintiff is awarded 40% the defendant's annuity, to be payable directly from the U.S. Office of Personnel Management upon the defendant's retirement. The plaintiff is also awarded a survivor annuity. The defendant shall not attempt to withdraw his contributions if he leaves his employment prior to retirement and the OPM shall be served with this judgment. The defendant's attempt to withdraw shall not erase the defendant's annuity rights under any conditions.
3. Until the defendant retires he shall pay the plaintiff weekly periodic alimony of $125. A contingent wage withholding order is entered.
4. The defendant shall hold the plaintiff harmless and indemnified from any claims arising from the mortgages on the London Lane real property. CT Page 7827
5. The defendant shall be solely responsible for all of the debts listed on his financial affidavit holding the plaintiff harmless and indemnified.
6. The court makes no orders affecting the defendant's interest in the Palm Beach Gardens, Florida real property.
7. The plaintiff shall be solely responsible for her debt to Kevin Beirne, her credit cards and the Great Lakes student loan.
8. The IRS refund check and the Tobin mortgage note are assigned to the plaintiff.
9. Each party shall retain the remaining assets each now owns or possesses.
10. The plaintiff is awarded lump sum alimony of $20,000 to be paid to her by the defendant on or before November 30, 1996.
11. The defendant shall assign ownership of the Travelers Insurance Company insuring his life for $150,000 to the plaintiff who shall thereafter be solely responsible for the premiums.
12. No attorney fees are awarded.
Counsel for the plaintiff shall prepare the judgment file and the documents necessary to allocate the defendant's pension. The defendant shall cooperate with the plaintiff and his attorney in effecting the court's orders.
HARRIGAN, JUDGE